NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-418

COMMONWEALTH

vs.

CARA L. RINTALA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2023, following a jury trial in the Superior Court, the defendant, Cara L. Rintala, was convicted of voluntary manslaughter.[1]  On appeal she argues that her conviction must be reversed because (1) the Commonwealth exercised a discriminatory peremptory challenge, (2) the judge failed to declare a mistrial based on the jury's exposure to extraneous information during deliberations, and (3) the judge failed to provide a portion of

---

[1] In 2011, a grand jury indicted the defendant for murder. The case went to trial in 2013 and resulted in a mistrial after the jury failed to reach a unanimous verdict.  The case went to trial a second time in 2014 and again resulted in a mistrial after the second jury did not reach a unanimous verdict.  In 2016, the case went to trial a third time and resulted in a conviction of first-degree murder.  In 2021, the Supreme Judicial Court reversed the conviction.  See Commonwealth v. Rintala, 488 Mass. 421 (2021).

her requested instruction regarding the adequacy of the police investigation.  We affirm.

Background.  On the evening of March 29, 2010, police officers were dispatched to the home of the defendant and her wife (victim) for a "possible domestic."  Upon arrival, an officer heard crying from the basement, went downstairs, and saw the defendant whom he recognized from her work as a paramedic.[2] The defendant was sitting on the basement floor, crying, and holding the victim across her lap.  The officer heard the defendant stating "I can't believe she's dead.  She's dead.  I can't believe she's dead."  The responding officer, along with another officer who had arrived at the scene, saw a "large amount of what appeared to be wet paint all over the area, as well as all over" the victim and the defendant.  The defendant had one hand on the back of the victim's head and "the other hand was essentially on [the victim's] stomach, rubbing and spreading paint."  The paint was wet and "[t]here was no coagulation."  The paint was "easily transferred" when one of the officers walked through it.

The officer checked the victim for a pulse, found none, and determined that the victim was "beyond life-saving measures." The victim's body was "extremely cold," and "[h]er skin was very

---

[2] Both the victim and the defendant worked as paramedics.

2

rigid and very stiff to touch."  Her face was "bluish."  A paramedic also observed wet, shiny, non-coagulated paint "all over the place."  He checked the victim and saw that she had no pulse; had "[i]ce cold extremities"; her "muscles were locked in a rigid position"; and she was in full rigor mortis.

The responding officer told the defendant that he needed to "take her away from this area," at which time the defendant "continuously" said, "I came home.  The door was open.  I don't know what happened."  The defendant stated that she and the victim "had been arguing since last night and this morning."

The medical examiner determined the victim's cause of death to be manual strangulation.  She also observed injuries to the victim's head, face, and neck, contusions on the head, and areas of bruising on the victim's arms and legs.  The medical examiner opined that the victim died approximately six to eight hours before the officers and first responders arrived.

At trial, the Commonwealth introduced testimony from witnesses who responded to the home, cell phone evidence, crime-scene evidence, physical exhibits, evidence of motive, and video of the defendant's police interview.  The Commonwealth contended that after killing the victim, the defendant went shopping in order to craft an alibi and, upon returning home, sought to contaminate the crime scene by pouring paint on the victim's

3

body and throughout the basement. The Commonwealth further maintained that the fresh, wet paint at the crime scene had been "freshly poured" and thus did not "match up" with the cold, stiff body of the victim who had been killed hours earlier.

The defense at trial centered on the claim that the police rushed to judgment and failed to conduct an adequate investigation of other suspects. The defense pointed to other people with whom the victim had prior relationships as suspects who also had motives to commit the crime.

Discussion. 1. Peremptory challenge. The defendant claims that the Commonwealth used age as a pretext to exclude a female Hispanic woman (juror no. 40) from the jury. Where the judge followed the protocol dictated by Commonwealth v. Soares, 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979), and its progeny, and found the reasons proffered by the Commonwealth to be genuine and adequate, we discern no abuse of discretion.

Article 12 of the Massachusetts Declaration of Rights prohibits the exercise of peremptory challenges "to exclude members of discrete groups solely on the basis of bias presumed to derive from that individual's membership in the group." Commonwealth v. Oberle, 476 Mass. 539, 544 (2017), quoting Commonwealth v. Rodriguez, 431 Mass. 804, 807 (2000). "Peremptory challenges are presumed to be proper, but that

4

presumption may be rebutted on a showing that (1) there is a pattern of excluding members of a discrete grouping and (2) it is likely that individuals are being excluded solely on the basis of their membership in that group." Oberle, supra at 545. "Once . . . a pattern is found, the burden shifts to the party exercising the challenge to provide a 'group-neutral' explanation for it." Id., quoting Commonwealth v. Maldonado, 439 Mass. 460, 463 (2003). "The judge must then determine whether the explanation is both 'adequate' and 'genuine.'" Oberle, supra, quoting Maldonado, supra at 464. "[T]he critical point of focus for the trial judge as well as the appellate court turns to the adequacy and genuineness of the explanation proffered by the party seeking to exercise the peremptory challenge." Oberle, supra at 546. See generally Mass. G. Evid. § 1116 (2026). We review for abuse of discretion. See Commonwealth v. Prunty, 462 Mass. 295, 304 (2012).

Here, on the second day of empanelment, the Commonwealth exercised a peremptory challenge of juror no. 40, a twenty-year-old female college student from Spain. Defense counsel objected to the challenge based on race, gender, and age.[3] At this point in the process, the Commonwealth had exercised five peremptory

---

[3] On appeal, the defendant centers her argument on the claim of a gender-based challenge, but our analysis addresses all three bases, i.e., gender, race, and age.

5

challenges (one of which the judge denied), only striking men from the jury.[4] Although there was no pattern of striking females or persons of Hispanic heritage, the judge asked the Commonwealth to justify the challenge. The Commonwealth provided a comprehensive explanation and stated, inter alia, that juror no. 40 was only twenty years of age; that "older jurors tend to bring with them greater life experience"; and that juror no. 40 had referenced her heavy courseload at school due to her double major. Defense counsel responded, in part, that the Commonwealth did not challenge a twenty-three-year-old Hispanic male earlier in empanelment who was seated on the jury. Defense counsel also stated that she "always object[s] when they try to get rid of young jurors because . . . when you do that then the [d]efendant does not get a fair cross-section of the jury." The judge found that the Commonwealth's explanation was genuine, sincere, the "actual basis for the challenge," and "personal to this juror," and thus overruled the objection.

We discern no abuse of discretion in the judge's ruling. Peremptory challenges may indeed be based on age, see Oberle,

---

[4] Prior to objecting to the Commonwealth's peremptory challenge of juror no. 40, the defendant had made Batson-Soares objections to other peremptory challenges exercised by the Commonwealth. See Batson v. Kentucky, 476 U.S. 79, 95 (1986); Soares, 377 Mass. at 489-491. This included an objection to the Commonwealth's peremptory challenge of a white male, alleging that the challenge was impermissibly based on race and gender.

6

476 Mass. at 545, and we disagree with the defendant's claim that the Commonwealth's reasons were pretextual.  To the contrary, the Commonwealth's reasons were race- and gender-neutral and specific to juror no. 40; and the judge's findings that the Commonwealth's justifications were genuine, adequate, and personal to juror no. 40 are supported by the record.  The judge -- here and throughout jury empanelment -- followed the Soares protocol with precision and care.  He did not abuse his "considerable discretion."  Prunty, 462 Mass. at 304. See Oberle, 476 Mass. at 545 (reviewing court defers to trial judge's sound discretion rather than substitute its review of transcript); Maldonado, 439 Mass. at 466 (appellate courts "particularly ill-equipped to assess [explanation's] genuineness").

2.  Jury deliberations.  At the close of the jury's third day of deliberations, the judge received a note from the foreperson stating that

> "Jurors have become aware of an outcome of a past trial with [the defendant] that came from a fellow juror.  We as a group would like you to be aware of this.  Some of the jury did not know/were not aware of the shared information. Thank you. . . . Info was that [the defendant] had been incarcerated for five years."

The following day of deliberations, the judge advised that he would conduct individual voir dire of each juror, starting with the foreperson, to determine whether each juror could remain

7

fair and impartial.  The judge also told counsel that "if you want me to ask any additional questions, I will do that."  The parties did not object to this procedure.  Following the voir dire of the foreperson, the judge conducted a voir dire of juror no. 15, who acknowledged that she had shared the extraneous information with the jury.  Following several questions, including questions proposed by defense counsel, the judge found that juror no. 15 could not be fair and impartial and excused her.  The judge conducted voir dire of the remaining jurors and ultimately excluded juror no. 18 at the request of defense counsel.  Two alternate jurors were added to the deliberating jury, and the judge instructed the jury to begin deliberations anew.  The following day, the defendant moved for a mistrial.  Based on the judge's voir dire of each juror and his findings that the remaining jurors could remain fair and impartial, he denied the motion.

Here, the defendant argues that the jurors were exposed to such prejudicial extraneous information that the prejudice was "irremediable," and a new trial is required.[5]  Commonwealth v. Kamara, 422 Mass. 614, 620 (1996).  "[W]hen a claim of extraneous influence on a jury is raised, a trial judge must

_____

    [5] The defendant does not argue that the trial was infected with structural error.

8

assess the possible prejudicial effect of the jury's exposure to extraneous information, and weigh the impact of that extraneous information on the jurors by conducting an individual voir dire of each juror." Id. at 616. If the judge conducts an adequate inquiry, the resulting decision to deny a motion for mistrial based on extraneous information is reviewed for abuse of discretion. Id.

In the present case, it is undisputed that the judge conducted a thorough and adequate individual voir dire of each juror and followed the protocol delineated in our precedent. See, e.g., Commonwealth v. Womack, 457 Mass. 268, 280-281 (2010). The judge was in a much better position than an appellate court to assess any impact on the jurors, as well as the demeanor and credibility of the jurors. Moreover, the defendant cites no authority to support the proposition that exposure to sensitive extraneous information, standing alone, mandates a new trial. As stated by the Supreme Judicial Court,

> "The defendant has cited no Massachusetts case, nor have we found one, in which, after individual voir dires of the jurors and explicit findings by the judge such as we have here, an appellate court has held that the taint of extraneous information was irremediable. We are not prepared to substitute our judgment for that of the trial judge who heard the evidence, carefully interviewed the jurors individually, and made a finding that each juror could do his or her job unaffected by whatever extraneous information had been injected into the jury room."

9

<u>Kamara</u>, 422 Mass. at 620.  See also <u>Commonwealth</u> v. <u>Santiago</u>, 50 Mass. App. Ct. 762, 766 (2001) (despite juror's exposure to fact that defendant had previously been convicted, judge properly denied motion for mistrial after conducting individual voir dire of each juror).  In view of the judge's careful and meticulous handling of the jury issue, adherence to the protocol established by our precedent, and clear findings on the record, we discern no abuse of discretion in the denial of the motion for mistrial.

3.  <u>Bowden instruction</u>.  At trial, the defense centered, in part, on the claim that the police rushed to judgment and did not conduct an adequate investigation.  The defendant requested a <u>Bowden</u> instruction, see <u>Commonwealth</u> v. <u>Bowden</u>, 379 Mass. 472, 485-486 (1980), which the judge agreed to provide to the jury.  The defendant further asked the judge to add to the Bowden instruction the following language:

> "I have instructed you elsewhere that your verdict may not be based on speculation.  However, I instruct you that if you determine there were relevant omissions in the police investigation that bear upon your verdict, that would not be improper speculation."

The judge declined to add the requested language because he believed it could confuse the jury and instead gave the standard and comprehensive <u>Bowden</u> instruction.  The defendant contends that the failure to provide the requested language caused

10

confusion, undercut the defense, and constituted reversible error.  We disagree.

"[I]t is within the discretion of the judge whether to provide the jury with a Bowden instruction that explains to the jury the inferences they may draw if they were to find the investigation inadequate."  Commonwealth v. Alvarez, 480 Mass. 299, 316 (2018).  See Commonwealth v. Lao, 460 Mass. 12, 23 (2011) (judge not required to instruct on claimed inadequacy of police investigation).  "Bowden simply holds that a judge may not remove the issue from the jury's consideration."  Commonwealth v. O'Brien, 432 Mass. 578, 590 (2000).

The defendant does not contend otherwise, but instead cites Alvarez, supra at 318, to support her claim that the Bowden instruction here was insufficient.  It is true that in Alvarez, the Supreme Judicial Court noted in the context of a potential retrial on that case that

> "if the judge decides not to give a Bowden instruction
> . . . it would be prudent to omit from the instructions the
> sentence, 'You are not to engage in any guesswork about any
> unanswered questions that remain in your mind,' to avoid
> the risk that the jury may interpret this sentence as
> undercutting the defendant's Bowden argument."

Id.  The present case, however, is distinguishable from Alvarez. Here, the judge did allow the defendant to present a full Bowden defense and did provide a Bowden instruction.  Thus, the concern expressed in Alvarez -- where the judge did not provide a Bowden

11

instruction -- does not apply to the present circumstances. Moreover, in _Alvarez_ the court recognized that where a judge instructs the jury in the final charge "to decide the case based solely on the evidence rather than on guesswork or conjecture, it is unlikely that the jury will hear that instruction as a derogatory comment on the defendant's _Bowden_ argument." _Id_. Accordingly, the defendant's reliance on _Alvarez_ here is unpersuasive.

We have reviewed the judge's instructions as a whole and discern no errors. The transcript further demonstrates that the judge provided defense counsel with substantial leeway to develop its _Bowden_ defense throughout trial and in closing argument. In short, the defense was not undermined, and the argument is unavailing. The defendant received a fair trial.

_Judgment affirmed_.

By the Court (Neyman, D'Angelo & Allen, JJ.[6]),

_Paul Little_

Clerk

Entered: July 21, 2026.

---

[6] The panelists are listed in order of seniority.